IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAD PELINO *et al.*, | * | |
| Plaintiffs, | * | Civil Action No. RDB-14-02771 |
| v. | * | |
| WARD MANUFACTURING, LLC, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This class action suit arises out of the presence of allegedly dangerous "Wardflex®" piping in residential and commercial structures in the State of Maryland. Plaintiffs, Chad Pelino and Tina Pelino ("the "Pelinos"), on behalf of themselves and the alleged class,[1] (collectively, "Plaintiffs") filed a four-count Class Action Complaint (ECF No. 2) against Defendant Ward Manufacturing, LLC ("Defendant" or "Ward Manufacturing"), asserting strict liability pursuant to § 402A of the Restatement (Second) of Torts (Count I), negligence due to a design defect (Count II), negligence due to a failure to warn (Count III), and breach of implied warranty (Count IV). Their Complaint is essentially identical to two class action lawsuits previously dismissed by this Court.[2] Currently pending before this Court are

---

[1] The Pelinos define the class as "[A]ll persons or entities in the State of Maryland who purchased a house or other structure in which Ward Manufacturing's Wardflex® is installed after September 5, 2006, or who after, September 5, 2006, purchased a house, or other structure, in which Ward Manufacturing's Wardflex® was installed prior to September 5, 2006." Compl. ¶ 95.

[2] *Hasley v. Ward Mfg., LLC*, Civ. A. No. RDB-13-1607, 2014 WL 3368050 (D. Md. July 8, 2014), in which the same counsel in this case participated, and *Roy v. Ward Mfg., LLC*, Civ. A. No. RDB-13-3878, 2014 WL 4215614 (D. Md. Aug. 22, 2014). No appeal was taken in *Hasley*, and *Roy* was ultimately remanded to the Circuit Court for Montgomery County Maryland with the consent of the parties.

Defendant Ward Manufacturing's Motion to Dismiss (ECF No. 16) and Plaintiffs' Motion for Leave to File a Supplemental Brief in Opposition to Defendant's Motion to Dismiss (ECF No. 25).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, Plaintiffs' Motion to File a Supplemental Brief in Opposition is GRANTED,[3] and the Defendant's Motion to Dismiss is GRANTED.

### BACKGROUND

In a ruling on a motion to dismiss, this Court accepts the facts alleged in the plaintiffs' complaint as true.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Ward Manufacturing is the manufacturer of Wardflex® corrugated stainless steel tubing ("CSST"), a type of ultrathin, flexible piping used to transport natural gas within residential and commercial structures.  Compl. ¶¶ 1-2.  CSST was originally created as an inexpensive, easy-to-install alternative to thicker, more cumbersome black iron pipe that predated CSST by a century.  *Id.* ¶ 31.  Because the material used in CSST is thinner than the black iron pipe, Plaintiffs allege that it is more susceptible to damage and leaking, especially when the surrounding structure is struck by lightning.  *Id.* ¶ 3.  In Plaintiffs' words, CSST is "susceptible to perforation by an electrical arc generated by an indirect lightning strike, which can cause fires, damage to and destruction of residential structures, and creates a substantial and unreasonable risk of death or personal injury."  *Id.* ¶ 5.

---

[3] This Court has broad discretion to grant leave to file supplemental materials.  Plaintiffs explain that they omitted a response regarding Count IV in their original Response to Defendant's Motion to Dismiss due to an administrative error.  Plaintiffs promptly filed their Supplemental Brief, and this Court sees no reason to deny their Motion.

The Pelinos originally had Wardflex® CSST installed in their home in Cecil County, Maryland. They allege that during a storm on August 13, 2013, they heard a series of popping noises and observed "multiple arcs of electricity"—essentially orange, blue and white beams of energy—emanating from the Wardflex® CSST piping running to their hot water heater. *Id.* ¶ 8. After the storm, plaintiffs smelled natural gas in the house and called their gas company. *Id.* A technician came to inspect the house and found that the Wardflex® CSST had been "perforated in two locations by electrical energy." *Id.* Plaintiffs then paid $11,700 to replace all Wardflex® CSST in their home with black iron pipe. *Id.* ¶ 9. Plaintiffs, on behalf of themselves and the Class, argue that Wardflex® CSST "is defective, should never have been sold, and needs to be removed and replaced from all structures." *Id.* ¶ 18.

The present action follows two virtually identical class action lawsuits dismissed by this Court last year. In *Hasley v. Ward Mfg., LLC*, Civ. A. No. RDB-13-1607, 2014 WL 3368050 (D. Md. July 8, 2014), this Court dismissed with prejudice the plaintiffs' class action claims, concluding that Maryland's economic loss rule barred standing for both named and unnamed plaintiffs. *Id.* at 1. Next, in *Roy v. Ward Mfg.*, LLC, Civ. A. No. RDB-13-3878, 2014 WL 4215614, at *1 (D. Md. Aug. 22, 2014), a different named plaintiff filed a complaint identical to that in *Hasley*, but with the addition of a second defendant-manufacturer of CSST.[4] *Id.* This Court denied the claims on the same grounds as *Hasley*. *Id.* The only distinction between *Hasley* and *Roy* and the subject action is that the Pelinos claim that they incurred an actual injury, and they add a breach of warranty claim. Compl. ¶ 131.

---

[4] In *Roy*, after this Court entered an order dismissing the case, a subsequent order was entered with the concurrence of the parties remanding the case to the Circuit Court for Montgomery County, Maryland.

Based on these claims, Plaintiffs argue that they, as well as all members of the class, have suffered damages.

Plaintiffs filed the subject suit on June 30, 2014 in the Circuit Court for Cecil County, Maryland. Ward Manufacturing then removed the case to this Court pursuant to 28 U.S.C. § 1332(d), also known as the Class Action Fairness Act ("CAFA").[5] Notice of Removal, ECF No. 1. Defendant subsequently filed the pending Motion to Dismiss (ECF No. 16) pursuant to Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure, seeking an order striking the class action certification; and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

STANDARDS OF REVIEW

I.   **Rule 23 of the Federal Rules of Civil Procedure**

Rule 23 of the Federal Rules of Civil Procedure allows one or more members of a class to sue on behalf of all members only if "there are questions of law or fact common to the class" and "representative parties are typical of the claims or defenses of the class…" Fed. R. Civ. P. 23(a)(2)-(3). The first prerequisite, commonality, "requires the plaintiff to demonstrate that the class members have suffered the same injury…" *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011)). Next, typicality demands a consideration of "the 'representative parties' ability to represent a class…" *Ealy*, 514 F. App'x at 304 (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)). A district court must conduct a rigorous analysis into whether the requirements of Rule 23(a) are met. *Ealy*, 514 F. App'x at 308.

---

[5] In its removal, Defendant maintained that the claim satisfied Section 1332(d)'s $5 million amount in controversy requirement.

## II.     Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.  Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later

5

establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, --- F.3d ---, 2015 WL 1088931, *11-12 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

In its Motion to Dismiss, Ward Manufacturing first asserts that this Court must strike Plaintiffs' class allegations under Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure. Second, Defendant contends that the Pelinos fail to state a claim on which relief can be granted. In their response, Plaintiffs counter that the Complaint states a cause of action

6

because the risks warned of in *Hasley* and *Roy* materialized when the Pelinos discovered a leak in their Wardflex® CSST piping. Plaintiffs also claim that issues of law and fact predominate over each of the class members, thereby making class certification appropriate.

## I.   Plaintiffs Fail to Attain Class Certification

Plaintiffs assert that Ward Manufacturing's attempt to terminate the class action allegations is premature, as the class is ascertainable and all unnamed class members have standing. Relying on *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991);[6] *Brunson v. Louisiana-Pacific Corp.*, 266 F.R.D. 112, 119 (D.S.C. 2010);[7] *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006);[8] and *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013),[9] Plaintiffs attempt to establish that issues of fact predominate over the whole class. *See* Response in Opp. to Mot. to Dismiss, 20-23, ECF No. 23. Yet an important difference distinguishes these cases from the subject action: in each instance, standing was predicated on the fact that the class representative and the unnamed class members "'possess the same interest and suffer the same injury…'" *Brunson* 266 F.R.D. at 120 (quoting *Lienhart v. Dryvit Systems, Inc.* 255 F.3d 138, 146 (4th Cir. 2001)). By their own admission, the Pelinos distinguish

---

[6] In *Byrant*, a group of Food Lion employees brought a class action alleging that their employer fraudulently denied employees from obtaining retirement benefits. The United States District Court for the District of South Carolina ruled that termination of the class action allegations was premature absent discovery. 774 F. Supp. 1495.

[7] In *Brunson*, a group of homeowners brought a class action against a manufacturer of a manufactured-wood exterior trim product, alleging breach of warranty claims for defects in the wood. The United States District Court for the District of South Carolina held that the class satisfied the certification requirements of Federal Rules of Civil Procedure 23. 226 F.R.D. at 118.

[8] In *Denney,* a group of taxpayers brought a class action against a bank, law firm, and accounting firm for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) after the plaintiffs were victims of fraudulent tax counseling. 443 F.3d at 259. The United States District Court for the Southern District of New York certified the class and ruled that plaintiffs satisfied the requirements for Article III standing. *Id.*

[9] In *Clapper*, the United States Supreme Court held that a group of privacy advocates failed to attain standing based on the threat of future injury. 133 S.Ct. at 1150. This ruling cuts against Plaintiffs' arguments in the present action, but Plaintiffs refer only to a footnote wherein the Supreme Court stated that the future injury need not be a literal certainty to attain standing. *Id.* at 1150 n.5. Plaintiffs' reliance on a single footnote in a case whose central holding refutes their argument is unpersuasive.

themselves from the rest of the class, stating that their "case is unique because the very risk warned about in the earlier CSST cases materialized here: lightning struck near the Pelinos' home, the electrical energy from the lightning arced along the Wardflex® in the Pelinos' basement, and the arcing electrical energy punctured the Wardflex® in two places…" *See* Pls.' Mem. In Opp. to Mot. to Dismiss at 5.  They offer no such allegations for any other potential class members.

Plaintiffs' strongest argument in support of class certification is the United States Court of Appeals for the Fourth Circuit's opinion in *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 164 (4th Cir. 2000) (en banc) (standing for absent class members was satisfied on the basis of an increased risk of future harm).  In *Friends,* the Fourth Circuit approved class certification for environmental activists who filed under a provision of the Clean Water Act that stipulates "any citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of an effluent standard or limitation under [the Act]." *Id.* (citing 33 U.S.C.A. § 1365).  The statute confers broad standing "to enforce the Clean Water Act to the full extent allowed under the Constitution." *Friends,* 204 F.3d at 152.  No such broad allowance for standing exists under state warranty or tort claims.  Absent any showing of commonality or typicality, Plaintiffs may not be certified as a class under Rule 23(a)(2)-(3).

## II.     This Court Retains Jurisdiction Despite Class Decertification

Once class certification is denied, only named Plaintiffs remain.  Federal courts differ as to whether to retain jurisdiction post-denial of certification, and the Fourth Circuit Court of Appeals has yet to speak on the issue.  Nevertheless, a consensus has begun to emerge

among federal courts of appeals. *See, e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010) (holding that if a defendant properly removes a putative class action, a district court's subsequent denial of Rule 23 class certification does not divest the court of jurisdiction); *see also In re Burlington Northern Santa Fe Ry. Co.*, 606 F.3d 379 (7th Cir. 2010) (following the well-established general rule that jurisdiction is determined at the time of removal, and subsequent events do not affect jurisdiction); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) (denying class certification based on failure to satisfy typicality and commonality requirements and remanding the case to federal district court for plaintiff's claims to proceed individually). Under this reasoning, a class action properly removed to federal court remains in that court following denial of class certification.

Conversely, several district courts have held that when a class of plaintiffs in federal court under diversity jurisdiction fails to attain certification, the named plaintiff must meet the amount-in-controversy requirement for § 1332(a). *See, e.g., Robinson v. Hornell Brewing Co.*, Civ. A. No. 11-2183 JBS-JS, 2012 WL 6213777, at *10 (D.N.J. Dec. 13, 2012) (when class action is filed and certification is denied, courts consider only whether the individual damages meet the amount in controversy); *see also Giovanniello v. New York Law Pub. Co.*, No. 07 Civ. A. No. 1990 HB, 2007 WL 2244321, at *4 (S.D.N.Y. Aug. 6, 2007) (district court dismissed claim for lack of subject matter jurisdiction after denying class certification and finding that the named-plaintiff's individual claims failed to meet the threshold diversity jurisdictional amount). The Pelinos allege that they incurred $11,700.00 in damages to

9

replace the Wardflex® CSST piping. This sum is not enough to satisfy § 1332(a)'s amount in controversy requirement.

This Court, however, is persuaded by the reasoning of the federal circuit courts, which align with the plain meaning of CAFA and the policy implications of divesting jurisdiction following decertification. In deriving the meaning of a statute, any analysis must begin with the text. *Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 173 (2009). Although CAFA does not specify what happens when class certification is denied, 28 U.S.C. § 1332(d)(8) provides "[t]his subsection shall apply to any class action *before or after the entry of a class certification order* by the court with respect to that action." (emphasis added). This provision indicates that federal jurisdiction under § 1332(d) attaches prior to certification.

Next, public policy interests weigh against divesting jurisdiction following decertification. First, the principle that "jurisdiction once obtained normally is secure" supports retention as a way to minimize costs and delay. *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010). Second, refusing to exercise jurisdiction "will invite plaintiffs to take another bite at the certification apple." *Samuel v. Universal Health Servs.*, 805 F. Supp. 2d 284, 290 (E.D. La. 2011) (citing *United Steel,* 602 F.3d at 1090). This "second bite" runs counter to Congressional intent to create broad federal jurisdiction for class action claims. *Id.* This Court therefore retains jurisdiction over the Pelinos' claims following Rule 23 denial, despite the fact that those claims allege only $11,700 in damages.

### III. Economic Loss Rule Bars Recovery for Claims I, II and III

The Court of Appeals of Maryland has delineated three possible types of losses related to products liability: "(1) personal injuries, (2) physical harm to tangible things, and

(3) intangible economic loss resulting from the inferior quality or unfitness of the product to serve adequately the purpose for which it was purchased." *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1332 (Md. 1994). In the third category, "economic losses include . . . the cost to *repair or replace* the product." *Id.* at 250 (emphasis added). Such losses cannot be recovered on the basis of tort claims. Replacing defective Wardflex® CSST thus clearly falls within the economic loss rule, and Counts I, II and III would ordinarily be barred. *See Hasley,* 2014 WL 3368050; *see also Roy,* 2014 WL 4215614.

The Pelinos argue that their three tort-claims may proceed under the risk of harm exception to the economic loss rule. In *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336 (Md. 1986), the Maryland Court of Appeals overturned a dismissal of a products liability class action claim based on the economic loss rule due to the serious danger posed by a defective product. *Id.* at 345. The Court reasoned that "where the risk is of death or personal injury the action will lie for recovery of the reasonable cost of correcting the dangerous condition." *Id.* Plaintiffs urge that the subject action is analogous to *Whiting-Turner*, and therefore the risk of harm exception should apply.

Yet, the alleged risks in this case do not approach the likelihood of occurrence of those in *Whiting-Turner*. The defendant in *Whiting–Turner* created a substantial risk of death to multiple residents in a twenty-one story residential building it had constructed because it did not adhere to fire codes. *Id.* at 338-39. In the instant case, Defendant's product has been approved by numerous codes and standards. Moreover, "mere possibilities are legally insufficient to allege the existence of a clear danger of death or *serious* personal injury." *Morris v. Osmose Wood Preserving,* 667 A.2d 624, 633 (Md. 1995) (emphasis in original). As this

11

Court previously explained, by definition, the chances of a lightning strike are very remote. *Hasley,* 2014 WL 3368050. The risk of harm is therefore insufficient to trigger the public safety rule.

## IV. Breach of Implied Warranty

Finally, Count IV alleges that Ward Manufacturing breached the warranty of merchantability under Maryland law. In moving to dismiss, Defendant contends that this Count fails to state a claim because Wardflex® CSST is not a "good" under Maryland's adaptation of the Uniform Commercial Code, Md. Code Ann., Com. Law § 2-105. Under Section 2-105, goods are defined as "all things, which are movable at the time of identification to the contract for sale . . ." The Maryland Court of Appeals in *Morris* considered the definition of a "good" in the context of a products liability case, dismissing a homeowners' warranty claim against manufacturers of plywood that was installed in the roof of their house. 667 A.2d at 637. Of particular relevance to the subject action, the court emphasized that the "plywood ceased to be goods because it became a permanently affixed part of a townhouse and was thereafter not movable . . . Therefore, when the plaintiffs bought their houses, the plywood was not goods; it was part of the real estate." *Id.* It was thus not a good within the meaning of Section 2-105.

In this case, the piping became a part of the real estate because it was "permanently affixed" when the house was built in 2011. Plaintiffs attempt to distinguish their case from *Morris*, arguing that as they were ultimately able to replace the piping, it was "movable" and could no longer be considered "permanently affixed" to their home. The logic of this argument, however, would also classify the plywood in *Morris* as a good, since plywood

roofing may also be replaced.  This Court will not ignore controlling Maryland precedent. Count IV thus fails to state a claim for which relief may be granted.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Leave to File a Supplemental Brief in Opposition to Defendant's Motion to Dismiss and Motion to Strike Class Allegations (ECF No. 25) is GRANTED, and Defendant's Motion to Dismiss (ECF No. 16) is GRANTED.

A separate Order follows.


Dated:	July 27, 2015	            /s/           
			Richard D. Bennett
			United States District Judge